## CHICAGO GREAT WESTERN RY. CO. v. RODDY.

(Circuit Court of Appeals, Eighth Circuit. July 18, 1904.)

No. 2,000.

1. TRIAL—DIRECTION OF VERDICT.

When the evidence leaves the material facts admitted or undisputed, and when the evidence leaves the material facts and the deductions from them of such a conclusive character that the exercise of a sound judicial discretion would permit the court to give effect to but one verdict, it is its duty to instruct the jury to return it.

When there is a substantial conflict in the evidence relating to the material facts, and when fair and rational minds may well draw different conclusions from established facts, the court should submit the issues to the jury.

2. INJURY TO RAILROAD EMPLOYÉ—DIRECTING VERDICT.

A rainstorm of extraordinary severity prevailed at Elma from 6 to 7 in the evening, and washed out the roadbed three-quarters of a mile south of that station. The sectionmen in charge of the section south from Elma and a telegraph operator were there. The heaviest portion of the storm ceased about 7, but lighter rain followed. The plaintiff, an engineer, was running north from Oelwein to Elma. He left Oelwein at 5. There was no storm south of New Hampton 15 miles from Elma. He passed that station at 7:30. Culverts and creeks were full of water, and low grounds were flooded at New Hampton and Alta Vista, a station four miles south of Elma. About 800 feet south of the washout a band of Italian trackmen attempted to warn the plaintiff of his danger, which they had discovered. But he did not observe their signals, or did not understand them. Neither the sectionmen nor the telegraph operator took any steps to patrol the track to discover its condition or to warn the enginemen of their danger before the plaintiff ran into the washout a few minutes past 8 in the evening, although they were at Elma, an hour had passed after the heaviest rain had ceased, and the washout was within a mile of the station.

*Held,* neither the absence of negligence of the sectionmen and telegraph operator, nor the contributory negligence of the plaintiff, was so clear that it was the duty of the court to give a peremptory instruction for the defendant.

3. CHARGE—REFUSAL OF REQUEST EMBODIED IN CHARGE.

Where a rule or principle of law is clearly declared by the court in its general charge, it is not error to refuse to repeat it in the words of counsel.

4. CHARGE—REFUSAL OF REQUEST CONTAINING SOUND AND UNSOUND PROPOSITIONS.

Where a request for an instruction contains several propositions of law, any one of which is unsound, it is not error to refuse it.

(Syllabus by the Court.)

In Error to the Circuit Court of the United States for the District of Minnesota.

John L. Erdall (A. G. Briggs and F. B. Kellogg, on the brief), for plaintiff in error.

Daniel W. Lawler (Frank Arnold, on the brief), for defendant in error.

Before SANBORN, VAN DEVANTER, and HOOK, Circuit Judges.

¶ 1. See Trial, vol. 46, Cent. Dig. § 377.

SANBORN, Circuit Judge.   This is an action for damages for a personal injury which the plaintiff below, John J. Roddy, alleged was inflicted upon him by the negligent failure of the Chicago Great Western Railway Company to give him timely warning of a washout of the roadbed, which was caused by an unusual storm of rain.   The railway company denied the alleged negligence, and averred that the plaintiff was guilty of negligence which contributed to his injury. At the close of the evidence a motion was made by the defendant, and denied by the court, to instruct the jury to return a verdict for the railway company, and a judgment for the plaintiff followed. The denial of this motion is the alleged error in which counsel for the company seem to place the most confidence, and it presents the usual question whether the evidence so conclusively failed to show causal negligence on the part of the railway company, or so clearly disclosed negligence on the part of the plaintiff which contributed to the injury, that it was the duty of the court, in the exercise of a sound judicial discretion, to withdraw the issues in the case from the jury.

There is always a preliminary question for the judge before a case can be properly submitted to the jury, and it is, not whether or not there is any evidence, but whether or not there is any substantial evidence, upon which a jury may properly render a verdict in favor of one of the parties to the action.   If there is no such evidence to sustain a verdict in favor of one of the parties, it is the duty of the court to direct the jury to return a verdict against him.   This duty is imposed upon the court in every case where the evidence and the rational deductions from it are undisputed, or of such a conclusive character that the exercise of a sound judicial discretion would compel a refusal to give effect to a contrary verdict.   Southern Pacific Co. v. Pool, 160 U. S. 438, 440, 16 Sup. Ct. 338, 40 L. Ed. 485; Patton v. Texas & Pacific Railway Company, 179 U. S. 658, 660, 21 Sup. Ct. 275, 45 L. Ed. 361, and cases there cited.   The exercise of this judicial discretion requires the direction of a verdict in every case in which the substantial evidence leaves the material facts and the just deductions from them admitted, undisputed, or so conclusively established that all reasonable men, in the exercise of an honest and impartial judgment, may fairly draw but one conclusion from them. On the other hand, if the facts are in dispute, and there is a conflict in the substantial evidence relative to their existence, or if from the established facts the minds of rational men might well draw different conclusions, it is the duty of the court to submit the disputed issues to the jury.   Chicago Great Western Ry. Co. v. Price, 38 C. C. A. 239, 243, 97 Fed. 423, 427, 428, and cases there cited.

At the close of the trial of this case there was evidence tending to establish these facts and circumstances:  Roddy was the engineer on a freight train of the defendant which was running north from Oelwein, in the state of Iowa, toward St. Paul, in the state of Minnesota.  He left Oelwein at about 5 in the afternoon of May 19, 1902. He stopped at New Hampton, a station 15 miles south of Elma. He left New Hampton about 7:30 in the afternoon.   He passed through Alta Vista, a station four miles south of Elma, about 8 in the

evening, without stopping, and he ran into a washout, which derailed his engine and seriously injured him, a few minutes after 8 o'clock, at a place about three-quarters of a mile south of the station of Elma. An unusually heavy rain storm prevailed at Elma and for a distance of 15 miles south of that station from 6 until 7 that afternoon, and lighter rain followed between 7 and 8. This storm was so extraordinary that one of the witnesses testified that he never saw it rain harder, so unusual that the telegraph operator at Elma remained at the station for an hour before he ventured forth for his supper, and all men seem to have taken shelter until 7 o'clock in the evening. Roddy was traveling south of the storm when it passed, and the only notice he received of its character was from the flooded condition of the country from New Hampton to Elma, and from the acts of the pedestrians he passed. At New Hampton there was so much water that it would not pass through a large culvert, and it backed up against the roadbed and covered several acres of land. At Alta Vista it carried away sidewalks, rose from 8 to 10 feet higher than usual, and within 2 or 3 feet of the railroad bridge which spanned a creek, overflowed the banks of the creek, and covered the surrounding fields. It did not, however, reach the ties of the railroad or interfere with the operation of the train at this point. At Alta Vista one of the witnesses motioned to the plaintiff as he passed over the bridge and pointed to the high water, but he did not attempt to stop the train. When Roddy came within a few hundred feet of the washout, he met and passed a band of Italian laborers who had been engaged in repairing the roadbed and track at Elma, and who were returning to Alta Vista, where they boarded and spent the nights. He had met and passed these men on other days. They were not the sectionmen in charge of this part of the railroad, and Roddy was aware of this fact. They had discovered three washouts in the roadbed on their way south from Elma at about 8 in the evening, and their foreman had instructed Mascolene, one of their number, to go south and stop Roddy's train, while he went back to Elma to notify the telegraph operator. Mascolene was carrying two lighted lanterns. He testified that he saw Roddy's train coming and "went to flag it, but it was so windy the lanterns went out"; that he was then on the ends of the ties; that he motioned to Roddy to stop the train with his arm, and called to him to the same effect, but that the train went on and he jumped into the ditch. Several of the Italians corroborated this evidence, and testified that they also signaled and called to the engineer to stop his train. Roddy and his fireman testified that they saw the Italians, but that they did not see or hear any signal to stop; that they did not recognize in the calls and gesticulations of the Italians anything different from their usual outcries and motions when they passed the train. At this time it was not so dark that the engineer could not see these trackmen and their movements, it was between daylight and dark, the headlight of the engine was burning, and the signal lights at Elma were lighted.

The storm struck Elma at 6 in the afternoon. Several of the sectionmen whose duty it was to care for the condition of a section of five miles of this railroad extending south from Elma were at

the station there between 6 and 7:45 that evening. The rules of the company required that all hands should be detailed during heavy storms to watch the road, that every precaution should be taken to prevent accident, and that agents, telegraph operators, and bridge and section men should telegraph the train dispatcher information as to severity of storms and extent of damage done, and that they should impart information to train and engine men. There was no evidence that the telegraph operator or sectionmen at Elma detailed any one to examine or watch the track south of that station, or that they took any steps to ascertain its condition or to warn the crew on Roddy's train of any defects in it during the two hours between the time when this storm struck that station and the derailment of the train three-quarters of a mile south of it. There was ample time between 7 in the evening, when the heaviest of the rain had passed, and the accident, more than an hour later, for the sectionmen to have patrolled this track, found the defects, sent a telegram to Alta Vista, and covered the track south of the washout with flagmen, torpedoes, and other danger signals. Under the statutes of Iowa railroad companies are liable for injuries inflicted by the negligence of the fellow servants of the victims, and the evidence in this case fails to lead our minds to the conclusion that all reasonable men in the exercise of an impartial judgment would be compelled, or would be likely, to conclude, in the light of the rules of the company, of the unusual virulence of the storm, and of the responsible nature of the duties intrusted to them, that the telegraph operator and the sectionmen at Elma exercised ordinary care to patrol this track, to ascertain and to warn the enginemen who were operating trains upon it of the danger from it, when, without making any effort to do either, they permitted Roddy to run into the pit in the roadbed within a mile of their station an hour after the heavier part of the storm had ceased.

Did the evidence conclusively establish the contributory negligence of the plaintiff? It was his duty to operate his engine with care, and to keep a constant and vigilant lookout upon the track to detect and avoid danger. The rules of the company required him to watch track, bridge, and watchmen to see the signals they were required to give, and, when circumstances rendered it necessary, to reduce speed to avoid unnecessary risk. In case of an extraordinary rainstorm or high water they imposed upon him the duty to stop his train and send a man ahead to examine embankments, bridges, trestles, culverts, and other portions of the road liable to damage, before passing over, to make careful inquiry at all stopping places to ascertain the extent and severity of the storm, and, in case of doubt as to safety in proceeding, to place his train on a siding and to remain there until it was safe to go on. Roddy did not reduce, but he probably increased, the speed of his train. He did not stop and send a man ahead to examine any embankment or bridge. He did not inquire as to the severity of the storm. He either did not observe or he did not understand the signals of the Italians for him to stop, if these signals were given. Was this course of action conclusive evidence of his failure to exercise ordinary care? In the determination of this question the alleged warning of the Italians

must be laid out of consideration. They testified that they gave the signals to stop by word and by gesture. The engineer and fireman testified that they were looking at them as they passed, but that they saw no such signals. There is here substantial evidence sufficient to sustain a finding by a jury either way upon the issue of the plaintiff's negligence in disregarding this disputed warning, and that issue was properly submitted to their determination. It may, however, be remarked in passing that it is not very probable that Roddy would have run on into the pit in the roadbed if he had seen and had understood the signals of the Italians for him to stop. The lights in Mascolene's lanterns went out, so that the engineer probably never saw them. Mascolene did not stand between the rails of the track to give his signals as he should have done, but upon the side of the track. Few, if any, of the Italians could speak English, so that it may be that the engineer did not understand what they said. These facts go far to explain their failure to convey their warning of danger to the mind of the engineer as he gazed at them from the window of his cab. What more is there in the evidence to sustain the demonstration that a reasonable man in the situation of the plaintiff would have perceived the danger, and would have stopped or inquired or sent a man forward to examine the roadbed? The filled culverts, the flooded fields and streets at New Hampton and at Alta Vista, and the gesticulating citizen at the latter place who gave no signal to Roddy to stop his train. But the care of the roadbed and of the track was intrusted primarily to the sectionmen at Elma, the operation and care of the engine and of the train to the plaintiff, Roddy. The primary duty of inspection, of watchfulness, and of preparation of the track for the passage of Roddy's train was upon the sectionmen at Elma. The duty of discovery and of warning of defects was in the first instance upon them and upon the telegraph operator, both on account of the nature of their employment, and on account of the fact that they had seen and had experienced the storm, while Roddy had not. Roddy's primary duty was to operate his engine and draw his train with reasonable care. The sectionmen and the telegraph operator had been in the midst of the storm. They knew its violence; they had the best opportunity to judge of its natural and probable effects. He had come from a region beyond that traversed by the heavy rain, and had not experienced it. It had passed over Elma an hour before he arrived in its vicinity and half an hour before he stopped at New Hampton, and he had received no warning of danger from the station at Elma, where the men in charge of the five miles of roadbed and track south of that station and the telegraph operator were located. The presumption of law and of fact, in the absence of countervailing evidence, always is that servants as well as masters have done their duty. And, while the negligence of the operator and of the sectionmen is no excuse for any negligence of Roddy, the fact that it was their duty to watch this roadbed and to give notice of any defects in it, together with the fact that when Roddy was within two miles of Elma they had given no notice of danger to him, might well be considered by the jury in determining whether or not a reasonable man in his situation

might not have justly inferred from the silence of the men in charge of this section of track which he was using, either that the storm had not been so violent as to endanger it, or that, if it had been so, the sectionmen had already patroled it and found it free from damage, so that he could safely drive his engine over it without special inquiry, and without stopping and sending a man forward to patrol it. It is not clear to our minds that such an inference and such a course of action would indicate to all reasonable men any lack of ordinary care, much less that it would compel their minds to that conclusion, and for that reason the evidence in this case fails to convince that the contributory negligence of the plaintiff was conclusively established.

In the consideration and determination of the questions which have been discussed, all the evidence in this case has been carefully read and considered, but no attempt has been made to do more in this opinion than to present its salient points. Many of the material facts were the subjects of contradictory testimony. Fair and rational minds might well draw different conclusions from the facts that were established. The evidence left the issues of negligence and of contributory negligence in doubt, and the court below was guilty of no abuse of judicial discretion in denying the motion for a peremptory instruction and submitting the issues to the jury for decision.

No exception to the charge of the court was taken. Thirteen separate requests for instructions, which cover four closely printed pages of the record before us, were presented to the court below, and were denied "save as the same may be given in the general charge." Five of these refusals are assigned as error. The requests to which they relate have been critically compared with the charge of the court, without the discovery of any prejudicial error in the refusal to submit them to the jury. The rules of law embodied in them, so far as they were applicable to the case, and so far as it was the duty of the court to communicate them to the jury, are found in the charge in terms as concise, clear, and expressive as those in which they are stated in the requests of counsel. Where a rule or principle of law is clearly declared by the court in its general charge, it is not error for it to refuse to repeat it in the words of the attorney who requests it. Southern Pac. Co. v. Schoer, 52 C. C. A. 268, 275, 114 Fed. 466, 473, and cases there cited.

One of the most serious complaints of the railway company regarding these requests is that the court refused to charge that the plaintiff must either establish by a preponderance of evidence that the servants of the defendant had actual knowledge of the washout so long before the derailment that by the exercise of reasonable care they could have repaired the track or warned the plaintiff before the derailment, or that he must establish by a preponderance of evidence that the washout occurred so long before the derailment that the defendant or its servants, in the exercise of reasonable care, ought to have discovered it, and that after such discovery there was sufficient time for the defendant or its servants, in the exercise of such reasonable care, to have repaired said track, or to have given the plaintiff the necessary warning of its condition. The statement

contained in this request is altogether too involved, refined, and technical, and it is not the law. If the storm was so violent and the rains so copious before 7 in the evening of the day of this derailment that great damage to the roadbed and track was to be reasonably anticipated from it, the duty was immediately imposed upon the sectionmen to patrol that track and to ascertain its condition. If they had done this, and had discovered a large volume of water flowing over or under the roadbed at the place of the accident which had not then undermined the track, but which constantly threatened to carry out a section of it, it would have been as much their duty to go forward and warn the plaintiff of the danger of driving his engine upon it as it would have been if the washout had actually occurred when they first discovered the danger. And if after they would, by the exercise of reasonable diligence, have discovered and have warned the plaintiff of the imminent danger that the track would be undermined, and before he arrived at the place of the accident the track had washed out, their care would have saved him from injury; while if, in the exercise of reasonable care, they could in this way have accomplished this result, their failure to exercise this care inflicted his injury. The time of the occurrence or of the discovery of the washout was not the sole condition or evidence of the negligence of the servants of the defendant. The violence of the storm, the copiousness of the rain, and the probable effect to be anticipated from them, conditioned the duty of the sectionmen and of the telegraph operator and the question of their negligence, whether the washout occurred long enough before the accident for them to have discovered it and to have given the warning or not, because the storm and the rain which caused the defect in the roadbed gave them warning of the natural results which would follow from them so long before the derailment that they might have discovered the actual condition of the roadbed and have given warning of the danger whether the track was then actually undermined or was only in imminent danger of it.

Error is also alleged because the court did not deliver to the jury the charge upon the preponderance of evidence which is embodied in the long request we have been considering. As, however, the proposed instruction contained two propositions of law, one of which has been found to be unsound, there was no error in the court's refusal to communicate the other. Where a request for an instruction contains two or more propositions of law, one of which is unsound, there is no error in a refusal to grant it. United States v. Hough, 103 U. S. 71, 72, 73, 26 L. Ed. 305; Monarch Cycle Co. v. Royer Wheel Co., 44 C. C. A. 523, 526, 105 Fed. 324, 328.

One of the rules of the railway company in evidence requires the engineer to keep a constant and vigilant lookout, and counsel for the company requested the court to charge the jury that "it was the plaintiff's first and paramount duty while his train was in motion to keep a constant and vigilant lookout along the track, and to take all precautions for the safety of himself and his train that a reasonably prudent man would take under the same circumstances." The court charged the jury that the plaintiff was required to use

due care not only for his own protection, but for the protection of the property intrusted to his charge; that he had to a very large extent the charge of the running of his train; that it was his duty to observe the condition of the road he was passing over, to determine as far as things came under his observation as to his safety; that he had the opportunity to observe the condition and extent of the flood, the condition in which it left the streams and the country, and the roadbed; and that the rules which he was required to observe referred to cases of the kind under consideration, and declared what his duties in such cases were. It then instructed the jury that it was for them to determine from the evidence whether the plaintiff performed the duties which a reasonable man in the performance of his employment, and under the rules which he was required to observe, would have performed, or whether he should have stopped his train and sent out persons ahead at any place for the purpose of ascertaining whether there was danger in the condition of the track resulting from the effect of the storm. The charge of the court here embodies the principle of law referred to in the request, and expresses it in more felicitous language than that used by counsel for the railway company. It called the attention of the jury to the rule which required the engineer to keep a constant and vigilant lookout, and it left the counsel of the company without any tenable ground for the exception to the refusal to grant their request.

The differences between the other requests which were refused and the charge of the court are less striking and important than those which have been noticed. There was no substantial error in the trial of this case, and the judgment below is affirmed.