CHICAGO, M. & ST. P. RY. CO. v. BENTON.

(Circuit Court of Appeals, Eighth Circuit. August 26, 1904.)

No. 2,054.

1. TRIAL—INJURY TO EMPLOYÉ—PEREMPTORY INSTRUCTION.

The foreman of a switching crew in the yard of a railway company was walking a few feet in advance and to the side of the rear of a train of backing cars, signaling to the engineer, when the rear car was derailed by low joints in the track, veered upon and killed him. These low joints were opposite each other, had existed for six months, and the fish plates upon them were loose. They were at a busy place in the yard, where during daylight the wheels of about 600 cars pounded over them daily. They were perceptible to one riding over them upon a train, but they were at a street crossing, which was planked, and there was no evidence that the foreman had ever examined them, or that he knew the condition of the fish plates. *Held*, the questions of negligence, assumption of risk, and contributory negligence were for the jury.

(Syllabus by the Court.)

In Error to the Circuit Court of the United States for the District of Minnesota.

F. W. Root, for plaintiff in error.

Henry W. Benton and Joseph W. Molyneaux, for defendant in error.

Before SANBORN and HOOK, Circuit Judges, and AMIDON, District Judge.

SANBORN, Circuit Judge. The only error alleged in this case is that the court refused at the close of the evidence to direct a verdict and judgment for the defendant. The action was for damages for negligence of the railway company, and the defense was the contributory negligence of the deceased. There was evidence tending to prove these alleged facts: John H. Stephenson, for whose death the administrator of his estate brought this action, was run over and killed by a train of cars in the yards of the defendant at Minneapolis on March 19, 1902. He was the foreman of a switching crew, and had been at work in those yards for some years. At the time of the accident he was walking on the side of the railroad track from five to ten feet distant and somewhat ahead of the rear one of a train of seven cars, which was backing along the track pursuant to his signals to the engineer. The two cars of the rear of the train were empty box cars, and the brake was set upon one of them. There were low joints in the rails of the track opposite each other. These joints were at a street crossing, which was planked for the passage of teams and footmen. The train was backing at the rate of ten or twelve miles an hour. Stephenson was walking with his back towards the train, signaling to the engineer to come on, when the rear car struck the low joints, jumped

¶ 1. Assumption of risks incident to employment, see note to Chesapeake & O. R. Co. v. Hennessey, 38 C. C. A. 314.

the track, veered towards, ran over and killed him. The low joints had existed in about the same condition for six months. A member of Stephenson's crew had noticed them when riding over them six months before, but he had never examined them, and Stephenson's knowledge of them was of about the same character as that of this member of his crew. The low joints were in a busy place in the railroad yard of the defendant, where during daylight about 600 cars passed over them daily, and where Stephenson's crew ordinarily took 30 cars over them every day. "A low joint is where a tie underneath that joint has been pounded so many times by wheels passing over it that there is a little space underneath that tie, and the rails will give when the wheels go over it." No accident had ever occurred on account of these joints before that which caused the death of Stephenson. An examination immediately after the accident disclosed the fact that the fish plates which held the ends of the rails in line and together were loose, and that the end of one of the rails could be moved by the pressure of the foot to the side of and below the end of the opposite rail, which was connected with it, to the extent of about a quarter of an inch. But there was no evidence that Stephenson ever made any such examination, or was aware of this condition. There was evidence of other facts at the trial, but none that are material to the questions presented to this court. Those questions are, would all reasonable men, in the exercise of a fair and impartial judgment, be led by the facts which have been recited to the conclusion that the railway company was not guilty of any lack of ordinary care which caused the death of Stephenson, or to the conclusion that the deceased either assumed the risk of the accident, or was guilty of negligence which contributed to it?

The duty to exercise ordinary care to inspect and to maintain in a reasonably safe condition the railroad over which the deceased was operating his train rested upon the defendant. The low joints which caused the accident had existed for the period of six months in the yard of the company where they were daily pounded by the wheels of 600 cars, and these facts were sufficient to warrant the jury in finding that the company had, or ought to have had, notice of them, upon the ground that a reasonably careful inspection of the track must have disclosed the defect in it as well as the fact that the fish plates were loose and that the ends of the rails were not firmly held in line. The inevitable effect of the continual pounding of the wheels of cars upon low joints in railroads must be to produce the destruction of the track and the derailment of the trains at some time, unless suitable steps are taken to repair and sustain them. If they are subject to constant use without inspection or repair, the coming of disaster, and probably of death, from them is a mere matter of time. These facts force the mind to the conclusion that some reasonable men, in the exercise of a fair judgment, might honestly reach the conclusion that a railway company which permitted the same low joints to exist for six months in a busy yard, where they were daily pounded by the wheels of

600 cars, might reasonably have anticipated as a natural and probable result of their existence derailment and disaster, and that it failed to exercise ordinary care to inspect, repair, and maintain its railroad in a reasonably safe condition.

Nor does the record in this case convince that the evidence that the deceased was guilty of negligence which contributed to his injury was so clearly preponderant that it was the duty of the court to peremptorily instruct the jury to return a verdict for the defendant. The primary duty was not upon him, but upon the railway company, to exercise reasonable care to inspect and know the nature of the defect in the track and the danger from it, and to make the railroad reasonably safe. The first duty of the foreman of the switch crew was to operate his train upon the track with reasonable care. The presumption of law and of fact is, in the absence of countervailing evidence, that masters and servants alike have done their duty; and while the negligence of the railway company and of its section men in the care and maintenance of the track constitutes no excuse for any negligence of the deceased, the facts that it was their duty to exercise ordinary care to keep the railroad in a reasonably safe condition, and that the presumption was that they had done so, might well be considered by the jury in determining whether or not a man of ordinary prudence in the situation of the deceased might not have reasonably inferred that, though the joints were low, they must have been inspected by those whose duty it was to do so, and have been found to be reasonably safe, so that it was not dangerous for him to use them. The facts of this case and the logical deductions from them fail to persuade that such an inference and the course of action which the deceased pursued would indicate to the minds of all reasonable men any lack of ordinary care on his part, and they fail to convince that the contributory negligence of the deceased was conclusively established.

For like reasons the evidence of the assumption of the risk of the derailment of the train was not so clearly preponderant as to require the court to withdraw that question from the jury. A servant assumes the risks and dangers of his employment which he knows, appreciates, and takes without objection, although they result from the negligence of his master. Where the defects are obvious, and the dangers from them are so apparent that a person of ordinary prudence in his situation would not fail to understand them, he cannot escape by proof that he did not appreciate them. St. Louis Cordage Co. v. Miller, 126 Fed. 495, 511, 61 C. C. A. 477, 63 L. R. A. 551; Choctaw, Oklahoma, etc., R. Co. v. McDade, 191 U. S. 64, 24 Sup. Ct. 24, 48 L. Ed. 96. But although the defects are obvious, where it is not his duty to examine and ascertain their exact condition and the danger from them, and where this danger is not apparent, and the servant does not know or appreciate it, he does not necessarily assume the risk of it. The degrees of care for, and of knowledge and appreciation of dangers from defects in, the roadbed and track of a railroad which condition the position of the company and of the section men and those which condition

the situation of the trainmen are not the same. Upon the former the law imposes the duty of inspecting the railroad, of giving notice to the trainmen of all dangers and defects, and of removing them. To them the notice of a defect is a notice of all the facts and dangers which a reasonable examination of it with a view to removing it would ascertain. The primary duty of the latter is to operate their trains upon the railroad, which they have the right to assume, in the absence of countervailing evidence, that the company and the section men have inspected and found to be or made reasonably safe. Stephenson was undoubtedly aware of the low joints and of their long existence. But there are low joints in railroads which threaten the immediate derailment of cars passing over them at the ordinary rate of speed and low joints which present no such threat. To the company, whose duty it was to inspect and know what joints threatened danger and what were safe, the existence of a defect was notice of the danger it portended whether the company was aware of it or not. To the trainman driving his train along the railroad free from the duty to inspect, examine, and know the dangers threatened by a low joint, the danger of derailment and disaster from it may not have been apparent. Stephenson's knowledge and appreciation of the danger from the low joints which injured him may have been, and probably was, limited to his knowledge of the existence of the low joints, and may have been, and probably was, conditioned by his assumption that they had been examined by the company, and found to be reasonably safe. The record is barren of testimony that he had ever examined them, or that he had ever learned that the fish plates which connected the rails were loose, and no accident had ever happened on account of them before that which injured him. The inference that the deceased knew or appreciated, or that a person of ordinary prudence and diligence in his situation, by the exercise of ordinary care, would have known or appreciated, the risk or danger of a derailment of his train by the action of these low joints, is not so clear that reasonable men might not fairly have reached a different conclusion, and hence the assumption of the risk by the deceased was not so conclusively established that it was the duty of the court to withdraw that question from the jury.

The principles and rules of law which control this case have been so often stated by this court that it is unnecessary to do more than to refer to the cases of St. Louis Cordage Co. v. Miller, 126 Fed. 495, 502, 511, 61 C. C. A. 477, 63 L. R. A. 551, Chicago Great Western Ry. Co. v. Price, 38 C. C. A. 239, 246, 97 Fed. 423, 430, and Chicago Great Western Ry. Co. v. Roddy (C. C. A.) 131 Fed. 712, where the rules and the reasons upon which they rest have been discussed and declared with some care.

Upon the authority of those cases the judgment below is affirmed.