WARE v. UNITED STATES.

(Circuit Court of Appeals, Eighth Circuit.   July 10, 1907.)

No. 2,431.

**1.** CRIMINAL LAW—CONSPIRACY—STATUTE OF LIMITATIONS—WHEN CONSPIRACY
AND SUBSEQUENT OVERT ACTS PUNISHABLE AFTER CONSPIRACY AND FORM-
ER OVERT ACTS BARRED—CONSCIOUS PARTICIPATION OF DEFENDANT WITHIN
THREE YEARS INDISPENSABLE.

Where a conspiracy has been formed and an overt act has been done in
execution of it more than three years before the filing of an indictment,
a prosecution for that conspiracy and overt act is barred by the statute
of limitations.

When in such a case subsequent overt acts are committed under the
old conspiracy within the three years, the existence of the conspiracy
and the conscious participation of the defendant therein within the three
years are indispensable to the maintenance of a prosecution for the con-
spiracy. But if these facts are established by competent evidence such
a prosecution may be sustained.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 14, §§ 274, 275.]

**2.** SAME—EVIDENCE—PROOF OF CONSPIRACY BEFORE THE THREE YEARS COMPE-
TENT, BUT INSUFFICIENT TO ESTABLISH IT WITHIN THE THREE YEARS.

Proof of the formation by the defendant and others, more than three
years before the indictment, of such a conspiracy as that charged in the
indictment and of an overt act thereunder prior to the three years, is in-
sufficient to sustain the charge of a conspiracy within the three years.
But, in connection with evidence aliunde of the existence of the con-
spiracy and of the defendant's conscious participation in it within the
three years, it is competent evidence for the consideration of the jury
in determining the issue presented by the indictment.

**3.** SAME—OVERT ACT OF CO-CONSPIRATOR INCOMPETENT TO ESTABLISH CON-
TINUED EXISTENCE OF CONSPIRACY.

An overt act committed by one of the alleged co-conspirators within
the three years pursuant to a conspiracy between him and the defendant,
formed and followed by an overt act more than three years prior to the
filing of the indictment without the defendant's consent or agreement
within the three years to the continued existence and execution of the
conspiracy, is incompetent to establish its existence and his participation
therein within the three years.

[Ed. Note.—Admissibility, on trial of joint indictments, of acts and
declarations of conspirators and codefendants after accomplishment of
object, see note to Sorenson v. United States, 74 C. C. A. 472.]

**4.** CONSPIRACY—ISSUE OF JOINT ASSENT TO EXISTENCE AND EXECUTION OF OLD
CONSPIRACY GOVERNED BY SAME RULES AS ISSUE OF FORMATION OF NEW
ONE.

The same rules of law and evidence govern the trial and decision of the
issue whether or not a defendant jointly with others consented or agreed
to the existence of a former conspiracy within the three years and the
subsequent execution of it, which control the issue whether or not the
conspiracy was originally formed, where that is the crucial issue.

**5.** CONTRACTS—HOMESTEAD LAW—AGREEMENT TO PROCURE CITIZENS TO ENTER
LANDS THEREUNDER AND GRANT USE TO ANOTHER UNTIL FINAL PROOF UN-
LAWFUL.

An agreement to procure qualified citizens to enter lands under the
general homestead law and to grant their use to another until they should
make final proof or dispose of their holdings, without the reservation of
any part of this use for the residence thereon or the cultivation thereof
by the entrymen, is inconsistent with the purpose and spirit and violative

154 F.—37

of the terms of the law, although no contract is made regarding the disposition of the title which may be obtained.

6. CRIMINAL LAW—APPEAL AND ERROR—EXCEPTION FAILS UNLESS RECORD SHOWS RULING CHALLENGED ERRONEOUS.

Where evidence is admitted in the course of the trial for certain purposes, an exception to a paragraph in the charge of the court, which declares that this evidence was properly admitted for these purposes, in the absence of any request to the court to exclude any specific evidence or to limit its effect, and in the absence of any objection or exception to its admission, and in the absence of any specification of the particular evidence challenged, is unavailing, because in such a case the record fails to prove the error, and the presumption that the action of the court below was right must prevail.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 15, Criminal Law, § 2619.]

Philips, District Judge, dissenting.
(Syllabus by the Court.)

In Error to the District Court of the United States for the District of Nebraska.

T. J. Mahoney and Henry Frawley, for plaintiff in error.
Charles A. Goss and Sylvester R. Rush, for defendant in error.

Before SANBORN and HOOK, Circuit Judges, and PHILIPS, District Judge.

SANBORN, Circuit Judge. On November 24, 1905, and on November 28, 1905, Ware, the defendant below, Frank W. Lambert, and Harry Welch were indicted under section 5440 of the Revised Statutes [U. S. Comp. St. 1901, p. 3676], for conspiring to defraud the United States of the title, possession, and use of certain tracts of land by means of fraudulent entries under the homestead laws. The first indictment relates to entries under sections 2289, 2290, 2304, Rev. St. [U. S. Comp. St. 1901, pp. 1388, 1389, 1413], the general homestead law, and the second to entries under the Kincaid act (Act April 28, 1904, c. 1801, 33 Stat. 547 [U. S. Comp. St. Supp. 1905, pp. 325, 326]), which authorizes each homesteader to enter 480 additional acres contiguous to his original homestead in a certain specified district. The defendant was tried alone on the two indictments and found guilty on all the counts of the second and on all but one of the nine counts of the first indictment.

Each of the counts of the indictment charged a conspiracy and an overt act thereunder within three years of the filing of the indictment in which it was found. There was evidence of a conspiracy between Ware and Lambert to cause fraudulent entries under the homestead laws and of an overt act, the procurement of one McKibben to make a fraudulent affidavit and application for a homestead entry more than three years before the indictments were filed, so that a prosecution for that conspiracy and act was barred by the statute of limitations. There was substantial evidence that within the three years Lambert caused homesteaders to make fraudulent entries, charged Ware upon his account books for expenses and services in causing these entries, in building shacks upon the lands entered in order to enable the homesteaders to prove their right to title, and in

maintaining the claims of the homesteaders, pursuant to the conspiracy of 1902, and that Ware knew of some of these acts, examined these account books, and paid Lambert for these acts pursuant to the agreement of 1902. By a request for a peremptory instruction and by other requests for instructions, which were denied, counsel for the defendant presents this question:

Where the conspiracy was formed and an overt act was done in pursuance of it more than three years prior to the indictment, and overt acts were subsequently done in the execution of it within the three years, may one of the conspirators be successfully prosecuted for it? The question is answered in the negative in U. S. v. Owen (D. C.) 32 Fed. 534, U. S. v. McCord (D. C.) 72 Fed. 159, 165, and in Ex parte Black (D. C.) 147 Fed. 832, 841. It is answered in the affirmative in U. S. v. Greene (D. C.) 115 Fed. 343, 347, 349, 350, U. S. v. Greene (D. C.) 146 Fed. 803, 889, Lorenz v. U. S., 24 App. Cas. Dist. of Columbia, 337, 387, U. S. v. Bradford (C. C.) 148 Fed. 413, 416, 419, U. S. v. Brace (D. C.) 149 Fed. 874, 876, Commonwealth v. Bartilson, 85 Pa. 482, 488, People v. Mather, 4 Wend. (N. Y.) 259, 21 Am. Dec. 122, American Fire Ins. Co. v. State, 75 Miss. 24, 35, 22 South. 99, 102, and Ochs v. People, 25 Ill. App. 379, 414. After a careful reading and consideration of these and other authorities, our conclusions are that the true answer to this question is that the existence of the conspiracy and the conscious participation of the defendant therein within the three years are indispensable to the maintenance of such a prosecution; but that, if these facts are established by competent evidence, such a prosecution may be sustained. Proof of the formation by the defendant and others, more than three years before the indictment, of such a conspiracy as that charged in the indictment under which an overt act has been done prior to the three years, is insufficient to sustain the charge of a conspiracy within the three years. But in connection with evidence aliunde of the existence of the same conspiracy, and of the defendant's conscious participation therein within the three years, it is competent evidence for the consideration of the jury in determining the issue presented by the indictment. An overt act committed by one of the alleged conspirators within the three years pursuant to a conspiracy between him and the defendant, formed and followed by an overt act more than three years prior to the filing of the indictment without the defendant's consent or agreement within the three years to the continued existence and to the execution of the conspiracy, is incompetent to establish its existence and his participation therein within the three years.

The offense under section 5440 is the conspiracy, not the conspiracy and the overt act. "The provision of the statute," says the Supreme Court, "that there must be an act done to effect the object of the conspiracy, merely affords a locus penitentiæ, so that before the act done either one or all of the parties may abandon their design, and thus avoid the penalty prescribed by the statute." U. S. v. Britton, 108 U. S. 199, 205, 2 Sup. Ct. 525, 27 L. Ed. 703. So that there is a locus penitentiæ after the performance of each overt act and a presumption of the innocence of the defendant, and if, after the performance of the first overt act, a defendant abandons the design of the conspiracy,

and the prosecution of the conspiracy and of the first overt act becomes barred by the statute, the overt acts of other conspirators within the three years in the performance of the old conspiracy without the conscious participation of the defendant ought not to charge, and cannot charge him with the offense, because they fail to evidence his intent to violate the law within the three years.

On the other hand, the offense denounced by section 5440 is not the mere formation, but the existence, of the conspiracy and its execution. And if by the agreement, or by the joint assent of the defendant and one or more other persons, within the three years, the unlawful scheme of the conspiracy is to be prosecuted, and an overt act is subsequently done to carry it into execution, the mere fact that the same parties had conspired and had wrought to accomplish the same or a like purpose, more than three years before the filing of the indictment, ought not to constitute, and does not constitute, a defense to the charge of the conspiracy within the three years.

The same rules of law and of evidence govern the trial and the decision of the issue whether or not the defendant jointly with others consented or agreed within the three years to the existence of the conspiracy and the subsequent execution of its scheme which control the trial of the issue whether or not the conspiracy was originally formed, where that is the crucial question. Evidence must be produced from which a jury may reasonably infer the joint assent of the minds of the defendant and of one or more other persons within the three years to the existence and the prosecution of the unlawful enterprise. Until such evidence is produced, the acts and admissions of one of the alleged conspirators are not admissible against any of the others unless the court in its discretion permits their introduction out of their order. But where evidence has been produced from which the joint assent of the defendant and one or more other persons within the three years to the existence and execution of the conspiracy may reasonably be inferred by the jury, then any subsequent act or declaration of one of the parties in reference to the common object which forms a part of the res gestæ, may be given in evidence against one of the others who has consented to the enterprise. And the joint assent of the minds of a defendant and others within the three years to the existence and execution of the conspiracy may be found by the jury like any other ultimate fact as an inference from other facts proved. Drake v. Stewart, 22 C. C. A. 104, 107, 76 Fed. 140, 143.

In view of these rules of law and the facts of this case, was there error in the refusal of the court below to give the instructions requested by counsel relative to this question? The main issue at the trial involved the character of the agreement between Ware and Lambert, which was made in the summer or fall of 1902, and more than three years before the filing of the indictment. Lambert testified, in effect, that this contract was that he should procure qualified homesteaders to enter public lands within the inclosure of the U. B. I. Land & Cattle Company, a corporation of which Ware was president; that he should erect a building for each of them upon their lands in order to enable them to prove up and secure title; that he should cause them to prove up and procure title to their respective tracts

from the United States, to give to Ware the use of these lands for grazing purposes until they obtained title under the homestead laws, and then to convey the lands to him for $150 for each quarter section; and that Ware agreed to pay this $150 for each quarter, to pay all the expenses of the homesteaders including their expenses of travel and their fees at the land office and to pay Lambert his expenses and $50 for each homesteader whom he procured to carry out this agreement. Ware admitted that he made an agreement with Lambert, but he testified that he never made any contract to buy or to take the title to any of these lands. He insisted that the limit of the agreement was that he should pay the necessary expenses of the homesteaders in filing and making improvements upon their lands until they secured title in consideration that they should give to him the use of these lands for grazing purposes until they proved up and secured their titles from the government. Whatever the terms of the agreement may have been, there was ample evidence to sustain a finding by the jury that it constituted an unlawful conspiracy to defraud the United States of the possession, use, and title of these lands. There was also persuasive evidence that Lambert procured one McKibben to make an entry under this agreement more than three years before either of the indictments were found, that there was no new or different agreement subsequent to that time, and that in the execution of this agreement he procured within the three years at least 15 persons to enter tracts of land within the inclosure of the U. B. I. Company, constructed shacks upon some of these tracts, took leases of some of them from the homesteaders to Ware for 99 years, paid all the expenses of the homesteaders, charged these expenses as they were paid, to Ware, in his account books, wherein they were sufficiently set forth to indicate their character, that he showed these books to Ware, who looked at the books and at the entries, and that he and Ware balanced up from the information which they obtained from these books, and Ware paid the charges against him thereon to the amount of $1,906.73. None of the homesteaders ever spent a day or a night in the shacks upon the land which they entered or cultivated or used a foot of it. The defendant himself testified that during the three years prior to the indictment he received these leases, looked at the account books of Lambert and at the entries therein, and paid the charges thereon, and during all this time he had the exclusive use of the lands upon which these homesteaders filed. Here was substantial evidence of the joint assent of the minds of Ware and Lambert within the three years to the existence and execution of the conspiracy to defraud the United States of the possession, use, and title of these lands, and of the conscious participation of the defendant therein, and hence there was no error in the refusal of the court to instruct the jury to return a verdict for the defendant.

The second request of his counsel upon this subject was that, unless the jury found that the unlawful agreement between Ware and Lambert charged in the indictment was made and the first overt act under it was done within three years prior to the filing of the indictments, or of one of them, they must find a verdict of not guilty, and this request was rightly refused because, although the unlawful agree-

ment was made and the first overt act under it was done prior to the three years, yet if, within the three years, the minds of the defendant and Ware met, and they agreed or assented to the existence and execution of the unlawful conspiracy within the three years, and the defendant consciously participated therein, he was still guilty of the offense charged.

The third request called to our attention was that if the jury found that whatever agreement was made between Ware and Lambert in respect to the matter of procuring filings and entries to be made upon lands of the United States was made prior to the filing of either indictment, and that all the filings and entries given in evidence were made or procured in pursuance of that agreement without a new agreement or conspiracy between the defendant and Lambert, then the jury must return a verdict for the defendant. But this request was misleading, and hence rightly refused because it declared that a new agreement or conspiracy in respect to the procuring of the filings and entries was indispensable to a conviction when a joint assent of the minds of Ware and Lambert within the three years to the existence and execution of the old conspiracy and Ware's conscious participation therein were sufficient to constitute the offense.

The fourth request was that:

"The presumption of innocence continues with the defendant throughout the entire trial, until the jury is satisfied beyond a reasonable doubt of his guilt, and unless upon a consideration of all the evidence in the case you are convinced of his guilt beyond a reasonable doubt, and likewise that he committed the offense charged within the period of three years before the 24th day of November, 1905, it will be your duty to return a verdict of not guilty."

The court did not give any part of this request in the words of counsel. But it instructed the jury in its own words, satisfactorily to counsel for the defendant, upon the presumption of innocence, and then, taking the first count of one of the indictments as its text, it instructed them that the defendant was charged with unlawfully conspiring with Lambert and others on the 28th day of November, 1902, to defraud the United States of the title and use of its lands and with inducing and hiring one Bunn on the 28th day of November, 1902, to file a fraudulent application to enter a tract of land as a homestead; that the offense was the conspiracy, the unlawful agreement charged; that the combination or agreement as charged in the indictment must be proved; that it had permitted the introduction of evidence of the McKibben entry and of other entries not named in the indictments, but that this evidence "was received, not for the purpose of being the basis upon which the government would be entitled to a verdict of guilty, but it was received solely for the purpose of throwing light upon the transactions mentioned in the indictment so far as it might in determining, first, whether or not there was a conspiracy such as charged upon the part of any of the parties connected with said entry, and, secondly, to determine the motive and intent of the parties in entering into such conspiracy or agreement. But unless you find the defendant guilty beyond a reasonable doubt upon one or more of these specific arrangements or overt acts, alleged in the indictment, or at least upon one of them, you cannot find him guilty, even if you

should believe him guilty of an unlawful conspiracy or agreement in respect to any of these matters which are not specifically alleged in the indictment. He is upon trial for the specific acts charged in the indictment, and those only, and you cannot find a verdict of guilty for some other act not charged in the indictment." The conspiracy was charged within the three years in every count of the indictments. The court instructed the jury that the conspiracy was the offense; that it must be proved as charged in the indictment; that they could not find the defendant guilty, although they believed he had entered into an unlawful conspiracy to cause the McKibben entry; but that they must find a conspiracy as charged in the indictments to procure the entries of the lands there specified. The jury could not have failed to understand, in the face of these instructions, that they must find the existence of the conspiracy within the three years, and hence there was no error in the refusal of the fourth request. Where a rule or principle of law is declared by the court in its general charge, it is not error for it to refuse to repeat it in the words of the attorney who requests it. Southern Pac. Co. v. Schoers, 52 C. C. A. 268, 275, 114 Fed. 466, 473, 57 L. R. A. 707; Chicago Great Western Ry. Co. v. Roddy, 65 C. C. A. 470, 475, 131 Fed. 712, 717.

The court charged the jury that the mere advancing of money to a party to enable him to enter his homestead and advancing money to make improvements thereon are not of themselves unlawful acts, but are simply acts and circumstances which may be considered in determining whether or not there was an unlawful agreement by which the entryman was to make the entry, not for his own use and benefit, but for the use and benefit of another. "Neither is it unlawful for a person," said the court, "having a bona fide homestead entry, to permit another to cultivate and use portions thereof. Such fact, if it be a fact, however, is to be considered with the other evidence in the case in determining the good faith and bona fides of the entryman." Counsel for the defendant complain that the court refused to instruct the jury that:

"If the arrangement which the defendant entered into with Frank W. Lambert contemplated no more than that the defendant should pay said Lambert a commission and should pay the necessary expenses of entrymen in making their filings and in proving the claims upon which they should enter and in making final proof, and that in consideration of such assistance the defendant was to have been permitted to graze his cattle over such lands and adjacent lands or to use such lands until such time as the entrymen should prove up or dispose of their holdings, but did not contemplate any arrangement by which the defendant or any person other than the entryman should succeed to, or get the benefit of such title as the entryman might obtain from the government either in whole or in part, such an arrangement would not be an unlawful conspiracy and your verdict will be not guilty."

The evidence was that the lands which were to be entered were within the inclosure of Ware's company, that they were unfit for cultivation, and that Ware's company was using them for grazing purposes. The effect of the requested instruction was that it was lawful for Ware and Lambert to agree to procure qualified homesteaders to enter lands under contracts with them that Ware should have the use of these lands until such time as the entrymen should prove up

or dispose of their holdings on condition that Ware and Lambert made no agreement that these entrymen should dispose of the titles which they might acquire from the government after they obtained them. But the purpose of the homestead laws is to induce settlement, cultivation, and the establishment of homes upon the public lands. The law requires the homesteader to reside upon his land at least one year before he may make his proof of title. It requires him to make an affidavit before he enters the land that he applies to enter it "for his exclusive use and benefit and that his entry is made for the purpose of actual settlement and cultivation, not either directly or indirectly for the use or benefit of any other person." Rev. St. § 2290. It is true that a homesteader may lawfully cut and remove such timber from the public lands he enters as it is necessary for him to remove to enable him to reside upon, improve, and cultivate the land before his final proof. But the cutting of the timber or any other use of the land or of its products by him prior to his final proof must be incident to his actual cultivation, improvement, and living upon the land, in good faith, to procure his homestead for his own benefit. Grubbs v. U. S., 105 Fed. 314, 320, 321, 44 C. C. A. 513, 519, 520; Conway v. U. S., 95 Fed. 615, 619, 37 C. C. A. 200, 204.

The use of the land entered by a homesteader, together with adjacent lands by another person for grazing purposes, until the entryman makes his final proof or disposes of his holdings, without the reservation or application of any part of the land or of its use to cultivation or to residence thereon, is inconsistent with the purpose and spirit and violative of the provisions of the law, and an agreement to procure homesteaders to make entries of public lands in order that third persons may obtain such use from them is an unlawful agreement. It is a contract to induce homesteaders to make applications to enter lands, not for their exclusive use and benefit, but for the use and benefit of another in violation of the oaths they are required to take when they make their applications to enter, and there was no error in the refusal of the court below to instruct the jury that such a contract was not an unlawful conspiracy. If qualified homesteaders could lawfully lease or grant the use of the lands they might enter to others, without restriction or reservation, until they should prove up or dispose of their holdings, third parties might appropriate to themselves by the use of successive homesteaders, who would dispose of their holdings before they made proof of title, large tracts of the public domain for indefinite periods, and might thereby retard or prevent the use or sale of these lands by the United States.

Counsel specify this paragraph of the charge of the court as error:

"Statements of Lambert, Welch, and others in the absence of the defendant on trial, and conversations with some of the witnesses on the part of Lambert, Welch, and others, in the absence of the defendant, have been given in evidence. It is proper that I should say to you that this evidence was admitted as bearing upon the question of the existence of a conspiracy and its nature, if any there was, and its shedding light upon the relation of the persons so speaking to the transaction. These declarations, statements, and communications were and are admissible as bearing upon the question of the existence of the alleged conspiracy and as touching the alleged connection of the persons making them therewith."

They insist that this instruction was erroneous: (1) Because it directed the jury to consider the admissions and declarations of others than the alleged co-conspirators, Lambert and Welch; (2) because it made the declarations and admissions of the alleged co-conspirators evidence of the alleged conspiracy; and (3) because it made the declarations of the alleged co-conspirators evidence against the defendant whether they were made during the pendency of the conspiracy, and in the execution of it, or before or afterward. The third objection is untenable, because counsel did not call the attention of the court to the specific exception to or limitation upon the general rule that the declarations and admissions of co-conspirators are evidence against their fellows after proof of the conspiracy, which they now insist should have been declared, so that the court did not consider or refuse to declare this limitation. All the objections to this portion of the charge are answered by the following considerations: Counsel point out no declarations, statements, or admissions of Lambert or of Welch or of others that were erroneously admitted in evidence, and they call attention to no objection or exception to the admission of any such declaration, statement, or admission. When the portion of the charge under consideration is examined, it is found to be nothing more than a declaration that evidence that had been admitted in the course of the trial for the purposes therein stated was properly received. If any of this evidence was inadmissible, the time to challenge it and to preserve the right to correct in this court the error of its admission was when it was offered, when the specific declarations, admissions, and conversations and their relations to the other evidence and the issues in the case could be properly seen by the court below and could be portrayed upon the record for the consideration of this court. As counsel make no complaint of any ruling admitting any of this evidence, and call our attention to no specific declaration, admission, or conversation that was erroneously received in evidence, and as circumstances might have existed which would have rendered such declarations, admissions, or conversations admissible in evidence, as where they were repeated to and confirmed by the defendant, or where they were admitted without objection or exception by the defendant, or were introduced by the defendant, or were drawn out by proper cross-examination of his witnesses, counsel have failed by a mere exception to this portion of the charge, without any request to exclude the specific evidence challenged, to overcome the prima facie presumption which always exists that the action of the court below was right. The burden is always on him who alleges error in the ruling of a court to establish that error by the record which he presents to the appellate court, and, in the absence of such proof, his objections cannot prevail. Chicago Great Western Ry. Co. v. Price, 38 C. C. A. 239, 250, 97 Fed. 423, 434; Southern Pac. Co. v. Arnett, 61 C. C. A. 131, 133, 126 Fed. 75, 77. In the absence of any showing in the record of the declarations, admissions, and conversations to which the court referred in its charge, of their connection with, and relation to, the other evidence in the case and of the circumstances under which the court received them in evidence, the defendant has not adequately borne this burden. This

record fails to show that the evidence referred to was not lawfully admitted for the purposes stated and the exception to the portion of the charge here challenged cannot be sustained.

The judgment below must be affirmed, and it is so ordered.

PHILIPS, District Judge (dissenting). I express no dissatisfaction with the majority opinion, save in respect of the manner in which the trial court dealt with the application of the statute of limitations to this case, and the implied approval thereof by the affirmance of the judgment.

There is no place in this record for any discussion of the question as to whether or not the existence of the original conspiracy between Ware and Lambert might be inferred simply from the fact of overt acts done by them, for the reason that the government, by its witness Lambert, made direct proof of the agreement between him and Ware entered into in the district of Nebraska in the month of October, 1902. Its character and purpose, as well as the manner to be pursued in its execution, were thus developed by the government. It put in evidence as an overt act done in furtherance of said agreement the transactions respecting the McKibben entries, which were more than three years prior to the finding of the indictment. It is conceded that the commission of the first overt act in furtherance of the conspiracy agreement put into operation the three years' statute of limitations.

In United States v. Britton, 108 U. S. 199, 2 Sup. Ct. 531, 27 L. Ed. 698, the court said:

"This offense does not consist of both the conspiracy and the acts done to effect the object of the conspiracy, but of the conspiracy alone. The provision of the statute that there must be an act done to effect the object of the conspiracy merely affords a locus penitentiæ, so that, before the act done, either one or all of the parties may abandon their design, and thus avoid the penalty prescribed by the statute. It follows as a rule of criminal pleading that in an indictment for conspiracy, under section 5440, the conspiracy must be sufficiently charged, and that it cannot be aided by the averments of acts done by one or more of the conspirators in furtherance of the object of the conspiracy."

In Dealy v. United States, 152 U. S. 546, 14 Sup. Ct. 683 (38 L. Ed. 545), the court again said: "The gist of the offense is the conspiracy." This is emphasized by the ruling in Callan v. Wilson, 127 U. S. 540, 555, 8 Sup. Ct. 1301, 32 L. Ed. 223, where it is asserted that the confederation or combination of two or more persons to do an unlawful act is in and of itself, at common law, an indictable offense, because such combination against the law is deemed more dangerous to the public peace and security than if done by a single person. Hence it is that the court, in Clune v. United States, 159 U. S. 590, 595, 16 Sup. Ct. 125, 40 L. Ed. 269, held that, although the act intended to be effected was forbidden by a special statute, which prescribed a minor punishment, as a fine without imprisonment, yet the charge of conspiracy under section 5440, if sustained, is sufficient to subject the party to the severer punishment, as a felony.

The conspiracy shown by the government to have been entered into between Ware and Lambert in October, 1902, made effective by an overt act, could no more form the basis of this prosecution

than if Ware had been indicted therefor within three years thereafter and convicted or acquitted thereof. The statute of limitations was as effectual a bar as a plea of autrefois convict or autrefois acquit.

No matter how many overt acts may have been committed by Lambert pursuant to that conspiracy, there was but one act for which the parties could be punished, and that was the consummated unlawful conspiracy. The action of the trial court recognized this as the law, for, while the plaintiff in error was found guilty on several counts, there was but one sentence imposed, as the conspiracy, and not the overt act, was the offense made punishable by the statute. Indeed, there was no occasion for more than one count in this indictment. After alleging the existence of the conspiracy, it was perfectly competent to proceed to set out in the same count all of the overt acts claimed to have been committed in furtherance thereof.

The irrefutable logic of the law, it must therefore be conceded, is that, no matter how many overt acts may be committed, if they are referable to one and the same conspiracy, they constitute not several conspiracies or evidence of as many conspiracies. The conspiracy on which the minds of the parties met was one and indivisible, and whenever it is consummated by the commission of one overt act, a statutory limitation, eo instanti, attaches and creates a bar to the prosecution. The corollary of this postulate indisputably must be that, after the original conspiracy has been followed by any overt act, more than three years prior to the indictment, to support the prosecution under the statute there must be a wrongful agreement found and an overt act done in furtherance thereof within the three years.

Names are of little consequence here. Whether we call it a new or renewed conspiracy, the essential requirement of the law, to give the statute of limitations the protective efficacy of its spirit, is that there must be a conspiracy between the parties charged formed within the statutory period of limitation.

To constitute any agreement as the basis of a civil action or criminal prosecution, there must be the aggregatio mentium—the coming together of the minds of the parties in the formulation of its terms. It must be established by competent, substantial evidence, and not by conjecture, and in a criminal case like this it must be established to the satisfaction of the jury beyond a reasonable doubt.

This brings us face to face with the crucial question in this case: The indictment charges a conspiracy formed within three years after the alleged conspiracy of October, 1902, was barred by the statute of limitations, and it sets out the overt acts done in pursuance of the conspiracy. There is no allusion in the indictment whatever to the antecedent conspiracy agreement of October, 1902, and the first overt act done thereunder; nor is there any allegation that that agreement was continued to within the three-year period, by any wrongful agreement or any co-operation or participation of the parties in the overt acts. And yet, to support the indictment, the government made proof of the antecedent agreement of 1902 to make out a case. And what is most remarkable in the trial of the case the government made proof of the McKibben entries in furtherance of the original conspiracy, which confessedly occurred more than three years prior to the in-

dictment. In respect of this the court told the jury that this evidence "was received solely for the purpose of throwing light upon the transactions mentioned in the indictment, so far as it might, in determining: First, whether or not there was a conspiracy such as charged, upon the part of any of the parties connected with said entry; and, second, to determine the motive and intent of the parties in entering into such conspiracy or agreement."

No refinement or specious reasoning can obscure the fact that the jury were thus authorized to determine whether or not there existed the conspiracy charged in the indictment by having recourse to the McKibben entries. In other words, the jury were warranted in inferring the existence of the essential fact of a renewal of the antecedent conspiracy, barred by the statute of limitations, from the character and quality of an overt act done more than three years prior to the conspiracy laid in the indictment; and the jury were further authorized, from such antecedent barred overt act, "to determine the motive and intent of the parties in entering into such conspiracy or agreement." What conspiracy or agreement was meant? As the McKibben entries were in furtherance of the original agreement, legitimately it could only be employed to throw light upon the character of that antecedent conspiracy. It could not throw light upon the claimed renewal conspiracy not then in existence. Yet, as shown by the majority opinion, the McKibben entries are referred to and used to support the conclusion that Ware's purpose was to secure to himself, by reason of the conspiracy agreement, the entire use and benefit of the simulated homestead entries.

The charge of the court further in this immediate connection was as follows:

"But unless you find the defendant guilty beyond a reasonable doubt upon one or more of these specific arrangements or overt acts, alleged in the indictment, or at least upon one of them, you cannot find him guilty, even if you should believe him guilty of an unlawful conspiracy or agreement in respect to any of these matters which are not specifically alleged in the indictment. He is upon trial for the specific acts charged in the indictment, and those only, and you cannot find a verdict of guilty for some other act not charged in the indictment."

From which the jury might well have conceived that the thought conveyed to them was: (1) That they might infer the existence of the conspiracy charged within the three years from "the overt acts, or at least upon one of them"; and (2) that the only reason why a conviction could not be based upon the McKibben entries was because they were not counted upon in the indictment. Inviting, as did the introduction in the case of the McKibben entries, the invoking of the statute of limitations thereto, the court refrained from any allusion whatever to it as a reason that no prosecution or conviction could be predicated thereon, and from the beginning to the end of the charge of the court not a single allusion is made to the defense persistently pressed by Ware's counsel of the question of the statute of limitations. Yet, the majority opinion states that "there was also persuasive evidence that Lambert procured one McKibben to make an entry under this agreement more than three years before either of the indict-

ments were found, that there was no new or different agreement subsequent to that time, and that in the execution of this agreement he procured, within three years, at least 15 persons to enter tracts of land within the inclosure of the U. B. I. Company," and that the parties did acts thereunder indicating the continuation of the conspiracy.

If there was no "new or different agreement" from that under which the McKibben entries were made, and that agreement was barred when the overt act evidenced by said entries was committed, then subsequent overt acts within the three-year period were clearly referable to, and were in pursuance of, the original agreement. So if the McKibben entries had occurred inside of the three-year period, then every subsequent overt act could have been laid in one and the same count as in furtherance of the agreement entered into in October, 1902.

Thus we are confronted with the proposition of a continuing offense without any direct proof of the meeting of the minds of the parties in a new or renewal agreement, in order to toll the statute of limitations.

In United States v. Irvine, 98 U. S. 450, 25 L. Ed. 193, an attorney was indicted for unlawfully withholding pension money after demand. The indictment was found in 1875, when the attorney had wrongfully withheld the money since 1870. After holding that the crime could not begin until the attorney had received the money, and had either refused to pay it over, or had done such act as indicated an intention to wrongfully withhold it, the court said:

"When it [i. e., the wrongful act] is committed, the party is guilty and is subject to criminal prosecution, and from that time, also, the statute of limitations applicable to the offense begins to run. * * * He pleads the statute of two years, a statute which was made for such a case as this; but the reply is: 'You received the money. You have continued to withhold it these 20 years; every year, every month, every day, was a withholding within the meaning of the statute.' We do not so construe the act. Whenever the act or series of acts necessary to constitute a criminal withholding of the money have transpired, the crime is complete, and from that day the statute of limitations begins to run against the prosecution."

The leading case relied upon by the majority opinion is that of Commonwealth v. Bartilson, 85 Pa. 482. The indictment in that case contained two counts. The first alleged a certain conspiracy and overt acts done in pursuance thereof, some of which were within the two-year period of limitations, and others without the two years. The second count alleged simply the conspiracy, but no overt acts. Upon demand by defendant's counsel, pursuant to the provisions of the Pennsylvania practice, the prosecutor presented a bill of particulars of the matters he expected to prove under the second count. When furnished, the particulars disclosed that the prosecutor expected to prove the same conspiracy and the same overt acts as those charged in the first count. Thereupon the court quashed both counts. The Supreme Court sustained the action in quashing the first count, and reversed it as to the second count, not, however, upon the notion that each overt act was a renewal of the conspiracy, but it was merely evidence. The court said:

"It is strongly urged, however, that inasmuch as it was averred in said count that the defendants had, in 'pursuance and renewal of said conspiracy,'

committed divers overt acts specifically described in said count, the date of one of which at least was within the statutory period, there was a continuance and a renewal of the conspiracy from time to time, and the statute was thereby tolled. This is plausible but unsound. The offense charged was the conspiracy. According to all the authorities, the conspiring is the essence of the charge, and if that be proved the defendants may be convicted. * * * According to the first count, the offense was complete on the 20th of December, 1874. The overt acts set forth do not constitute the offense. They are the evidence of it, and are sometimes said to be the aggravation of it. An overt act may or may not be unlawful, per se. It is because of its relation to an unlawful combination that it becomes obnoxious to the criminal law. * * * The commonwealth must allege and prove a conspiracy within two years. If this cannot be done, the commonwealth has no case. The pleader evidently felt the strain of this part of his case when he introduced the averment that the overt acts were in 'renewal' of the original conspiracy. It was practically laying an offense with a continuando. It was an attempt to prove the existence of a crime within the statutory period, by showing its commission outside of such period, and that it had been continued down to a time within it."

Then adverting to the language employed in a former decision by the same judge, to the effect that there was no such thing as a continuing offense, he said that it was not intended to assert that a man might not repeat an offense from day to day, as in the case of maintaining a nuisance, and other familiar instances which might be referred to, which might be done daily for an indefinite period, and then said:

"But a man could not be convicted of maintaining a nuisance charged to have been committed 10 years prior to the finding of the bill of indictment by proving that he had continued the nuisance, day by day, to a time within the statutory period."

The court held that the trial court erred in suppressing the first count, as it charged a conspiracy within the period of two years, as the jury might be warranted in finding the essential fact or a new or renewal conspiracy from the character of the acts done thereunder. From which it is quite clear, to my mind, that the court intended nothing more than to say that the existence of the conspiracy itself might be found to exist, in the absence of direct evidence as to its formation and its terms, by overt acts indicating that it had been renewed from time to time, when "each renewal constitutes a fresh conspiracy for which an indictment will lie."

There is no disguising the fact that this case was tried throughout upon the idea that the mere proof of overt acts, done within three years, was sufficient to toll the statute of limitations. This was the theory upon which the attorney for the government laid stress in his argument before this court. The whole substance of the charge of the court respecting the conspiracy was: (1) That the first inquiry should be: "Was there an unlawful agreement entered into by two or more parties named in the indictment to defraud the United States out of certain of its public lands mentioned in the indictment." (2) That this agreement "must be proved, because without a corrupt agreement or understanding there is no conspiracy, but circumstantial evidence may be resorted to to show the agreement or conspiracy, the acts of parties in the particular case, and the character of the transactions or series of transactions, with the accompanying

circumstances as the evidence may disclose them, from which evidence may be derived of the existence or nonexistence of an agreement, which may be expressed or implied." And (3) "should you find that there was a conspiracy entered into, as charged in the indictment, and that the defendant, Ware, was one of the parties to such conspiracy, then you should inquire whether or not one or more of the parties to such conspiracy did the act or acts in pursuance or in furtherance of such conspiracy and unlawful agreement, as is charged in the indictment, which I have denominated and called the overt act."

In so far as the jury were advised by the court, if they believed the testimony of the witness Lambert, that he and Ware entered into an agreement in October, 1902, to effect the homestead entries for Ware's sole use and benefit, that as that "was an unlawful conspiracy or agreement entered into of the character charged in the indictment," they were authorized to convict on that agreement. The subsequent language, "if you find that there was an unlawful conspiracy of the character charged in the indictment," was perfectly consistent with what preceded. "A conspiracy entered into as charged in the indictment" by no reasonable intendment can be held to have conveyed to the minds of the jury that it was essential to find that the agreement and the first overt act done thereunder must have occurred within three years next before the finding of the indictment. This for the palpable reason that the government's evidence showed that the agreement was entered into beyond the three-year period; and, as already shown, the court told the jury that the McKibben entries, made in furtherance of that agreement, could be looked to as throwing light on the character of the conspiracy agreement, and to enable them to determine whether or not there was a conspiracy. As already stated, there was not one syllable in the charge suggesting to the jury that there was such a thing as the statute of limitations applicable to prosecutions for such conspiracy, nor was there a single suggestion of the necessity of proving, after the statute of limitations attached to the McKibben entries, to the satisfaction of the jury, beyond a reasonable doubt, that there had been a renewal of the original agreement, or even that they should find that there had been overt acts pursuant thereto committed within the three years, participated in by both the parties.

The majority opinion suggests certain acts done within the three-year period from which the jury might be warranted in finding the required renewal, or joint participation by both Lambert and Ware. It is sufficient to say that no such question was submitted by the court to the jury. That was a question of fact which the jury alone was authorized to respond to in a criminal case. On discussion before them they might have entertained a different notion of the effect of such facts from that of the court.

The nineteenth request made by defendant for an instruction was:

"Unless you [the jury] find from the evidence beyond a reasonable doubt, that he [Ware] did make such an unlawful agreement with Frank W. Lambert as is set out in one or both of the indictments in question, and that that agreement was made within three years prior to the finding of such

indictment, and that the first overt act done by either the defendant or Lambert pursuant to such agreement was done within three years prior to the finding in the indictments herein or one of them, you will return a verdict of not guilty."

The twentieth request was to the effect that if the jury found from the evidence that whatever agreement was made between Ware and Lambert was made either in August or October, 1902, and that the filing referred to in the first of the McKibben entries was made prior to November 24, 1902, and that all of the filings and entries which were given in evidence were made or procured in pursuance of and to effect the object of the agreement made between the defendant and Lambert in August or October, 1902, or prior to November 24, 1902, without a new agreement or conspiracy between the defendant and Lambert, they should find a verdict of not guilty.

The twenty-first request asked the court to charge the jury that the burden was upon the government to prove that such unlawful conspiracy or agreement was entered into by the defendants within the period of three years next prior to the 24th of November, 1905, and if the evidence fails to satisfy the jury, beyond a reasonable doubt, both that such unlawful conspiracy or agreement was entered into by the defendant and Lambert, and that such unlawful agreement or conspiracy was entered into within the three-year period prior to the 24th of November, 1905, it was their duty to acquit him.

If it be conceded that the twentieth request was objectionable in the employment of the term "without a new agreement or conspiracy," yet the other requests were not subject to that criticism. The substantive effect of them was that, unless the jury should find that the conspiracy or agreement charged in the indictment was entered into and the overt acts thereunder were committed more than three years before the finding of the indictment, or unless the jury should find beyond a reasonable doubt that both the unlawful conspiracy and the overt acts thereunder were entered into and committed more than three years before the indictment, they should acquit the defendant. The attention of the court was thus directly invited by these requests to the applicability of the statute of limitations to this case. As heretofore shown in this discussion, the general charge given by the court did not in substance or effect cover either of these requests or express any substantive equivalent therefor, but left the jury without any thought in their mind even of the existence of the statute of limitations or the necessity of finding any renewal or continuation of the original conspiracy or joint participating acts of the conspirators mentioned in the majority opinion of the court. Mr. Justice Story, in Livingston v. Maryland Insurance Company, 7 Cranch 506–544, 3 L. Ed. 421, discussing the proposition that a party is entitled to a direct declaration upon a distinct phase of the case, said:

"If in point of law the plaintiffs were entitled to such direction, the court erred in its refusal, although the direction afterwards given by the court might, by inference and argument, in the opinion of this court, be pressed to the same extent. For the party has the right to a direct and positive instruction, and the jury are not to be left to believe in distinctions where none exist, or to reconcile propositions by mere argument and in-

ference. It would be a dangerous practice, and tend to mislead instead of enlightening a jury."

Thompson, in his work on Charging the Jury (section 78), approves this rule, for it is instinct with justice and fair play. Cahn v. Reid et al., 18 Mo. App. 115, 135, 136.

As the charge of the court in respect of the McKibben entries and the purpose for which it was admitted, commented on in this opinion, were excepted to, and error assigned thereon, the judgment, in my opinion, should be reversed for the palpable error committed therein; and I am of opinion that the cause should be reversed for the refusal of the court to give the nineteenth and twenty-first requests .for instructions asked by the defendant below, and for its failure in its charge, directly or indirectly, to advise the jury of the statute of limitations applicable to this case, and for not even submitting to them the question of fact as to whether there was any evidence of a renewal of the conspiracy or any joint participating acts of the parties in subsequent overt acts, from which the existence of the fact of its renewal could be inferred.

No hardship results to the government from the foregoing views. Statutes of limitation are statutes of repose and peace. They are favored by the law, not only because they give repose and security to title to property, but because they give protection as well to the life and liberty of the citizen. If the government desires to prosecute such offender as Ware for his alleged continued frauds committed upon the government in thwarting its public land laws, he is liable to prosecution every time he does the forbidden act in pursuance thereof, either by himself or through another acting as his agent or instrument, if such act be not barred by the three-year statute of limitations. But if the government, in order to inflict upon him the severer penalty under the conspiracy statute, does not or did not avail itself of its right to prosecute when the offense was committed by the overt act within three years thereafter, it is its own fault, and, if not discovered until after the three-year limitation, it is sufficient to say that the law prefers to protect the citizen against the severer punishment after the lapse of such a length of time, when the evidence, perhaps, has been lost, the witnesses are inaccessible, leaving the government its right to proceed against the offender independent of the conspiracy statute.

In other respects, I concur in the opinion of the majority.