### UNITED STATES v. RALEY et al.

#### (District Court, D. Oregon. October 4, 1909.)

#### No. 5,017.

**1. CONSPIRACY (§ 33*)—DEFRAUDING UNITED STATES—ELEMENTS—OFFENSE.**

Under Rev. St. § 5440 (U. S. Comp. St. 1901, p. 3676), prohibiting a "conspiracy" to commit any offense against the United States, or to defraud the United States in any manner or for any purpose, it is sufficient that it be the conspirator's purpose to commit a willful fraud on the law, or some statutory requirement pertinent to be observed, in view of the present controlling conditions; and it is not necessary that there should be a conspiracy to do an act that is an offense or crime by some statute of the general government, or to deprive the United States of its property or some property right.

[Ed. Note.—For other cases, see Conspiracy, Cent. Dig. § 60; Dec. Dig. § 33.*

For other definitions, see Words and Phrases, vol. 2, pp. 1454–1461; vol. 8, p. 7613.]

**2. INDIANS (§ 15*)—INDIAN LANDS—SALE—STATUTES.**

The officers of the government having been unable to sell all the excess lands in the Umatilla Indian reservation at public sale, as authorized by Act Cong. March 3, 1885 (23 Stat. 340, c. 319), private sale of such lands subsequently authorized by Act Cong. July 1, 1902 (32 Stat. 730, c. 1380), was subject to the same terms and conditions affecting the purchase, regulating actual settlements, payment of purchase price, etc., as were imposed by the former act on public sales thereof.

[Ed. Note.—For other cases, see Indians, Dec. Dig. § 15.*]

**3. CONSPIRACY (§ 43*)—MEANS—INDICTMENT.**

In an indictment for conspiracy to defraud the United States, it is sufficient that the means be set out with such particularity as will put defendant on notice of what he is to meet at the trial.

[Ed. Note.—For other cases, see Conspiracy, Cent. Dig. §§ 79–99; Dec. Dig. § 43.*]

**4. CONSPIRACY (§ 43*)—INDICTMENT—PURCHASE OF INDIAN LANDS.**

An indictment for conspiracy alleged that defendants conspired to defraud the United States out of the Umatilla reservation lands sold at private sale by means of procuring persons to make false and fraudulent applications and affidavits to purchase such lands for the benefit of defend-

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

ants, and procured them to make such false and fraudulent applications and affidavits. *Held*, that an objection that there was no requirement of the statute for the sale of such lands that an affidavit should be made for the "purchase" of the land, but that an "oath or affirmation" was required of the purchaser at the time of the purchase, and that the indictment did not charge that defendants conspired to defraud the government by procuring persons who had become purchasers to make fraudulent oaths or affirmations was hypercritical; a false affidavit being tantamount to a false oath or affirmation.

[Ed. Note.—For other cases, see Conspiracy, Cent. Dig. §§ 79–99; Dec. Dig. § 43.*]

5. CONSPIRACY (§ 43*)—FRAUD AGAINST THE UNITED STATES—INDICTMENT—AFFIDAVITS—OATH.

In an indictment for conspiracy to defraud the United States by making a false oath or affidavit in connection with the purchase of Umatilla reservation lands, it was not necessary to set out the details of the administration of the oath, by whom administered, or that the person officiating was an officer duly qualified to do so.

[Ed. Note.—For other cases, see Conspiracy, Cent. Dig. §§ 79–99; Dec. Dig. § 43.*]

6. CONSPIRACY (§ 43*)—INDICTMENT.

An indictment for conspiracy in procuring false public land affidavits was not defective for failure to allege in what respect the affidavits were false or fraudulent.

[Ed. Note.—For other cases, see Conspiracy, Cent. Dig. §§ 79–99; Dec. Dig. § 43.*]

7. INDICTMENT AND INFORMATION (§ 59*)—REQUISITES.

An indictment is sufficient if it states facts furnishing accused with such a description of the charges against him as will enable him to make his defense and avail himself of his prosecution or acquittal for the same offense, and informs the court of the facts alleged, so that it may decide whether they are sufficient in law to support a conviction.

[Ed. Note.—For other cases, see Indictment and Information, Cent. Dig. §§ 180, 181; Dec. Dig. § 59.*]

8. CONSPIRACY (§ 43*)—DEFRAUDING UNITED STATES—INDICTMENT—MEANS.

Where an indictment for conspiracy to defraud the United States alleged that defendant conspired to obtain Umatilla reservation lands by procuring persons to make false affidavits for the purchase of the lands on defendant's account, and by procuring persons to make contracts prior to such purchase whereby the title was to inure to defendant's benefit, and by procuring them to make false proofs of residence and cultivation of the lands, all of which acts were forbidden and unlawful, it sufficiently charged the means by which the conspiracy was to be effectuated.

[Ed. Note.—For other cases, see Conspiracy, Cent. Dig. §§ 79–99; Dec. Dig. § 43.*]

9. CONSPIRACY (§ 27*)—ELEMENTS.

A conspiracy consists in the unlawful combination, and, but for the necessity of alleging an overt act, is committed when the combination is entered into, without anything further being done to effect the object.

[Ed. Note.—For other cases, see Conspiracy, Cent. Dig. §§ 38, 39; Dec. Dig. § 27.*]

10. CONSPIRACY (§ 27*)—OVERT ACT.

Where defendants conspired to obtain Umatilla reservation lands by procuring false applications to purchase, defendant's act in procuring some person to make an application to purchase, and a false oath accompanying it, would constitute a sufficient overt act.

[Ed. Note.—For other cases, see Conspiracy, Cent. Dig. §§ 38, 39; Dec. Dig. § 27.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

11. CONSPIRACY (§ 43*) — DEFRAUDING UNITED STATES — INDICTMENT—PUBLIC LANDS.

Where an indictment for conspiracy to defraud the United States alleged that the defendants had conspired by means of false applications to purchase to obtain title to a portion of the public lands subject to private sale and situated on the Umatilla Indian reservation, in Umatilla county, Or., not allotted nor required for allotment, it was not material that such lands were not public lands in the strict sense; the ultimate title being in the United States.

[Ed. Note.—For other cases, see Conspiracy, Cent. Dig. §§ 79-99; Dec. Dig. § 43.*]

12. CRIMINAL LAW (§ 150*)—LIMITATIONS—OVERT ACTS.

Where conspirators are acting together for a common purpose comprehended by the scheme, limitations begin to run from the last overt act, except as to a conspirator withdrawing from the scheme, as to whom the statute runs from time of his withdrawal.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 274, 275; Dec. Dig. § 150.*

Commencement of period of limitations against prosecutions for continuing offenses, see note to Ware v. United States, 84 C. C. A. 519.]

J. H. Raley and another were indicted for conspiracy, and demurred to the indictment. Overruled.

John McCourt, for the United States.
Martin L. Pipes and Henry E. McGinn, for defendants.

WOLVERTON, District Judge. The questions presented for determination here arise upon a demurrer to an indictment charging the defendants with having committed the offense of conspiracy. The language of the indictment, omitting such as relates to the overt acts, is as follows:

"That the defendants J. H. Raley and John W. Crow, and William Rahe and J. H. Parkes, together with other persons to the grand jurors unknown, upon the fifteenth (15th) day of August, 1902, in Umatilla county, within the state and district of Oregon and within the jurisdiction of the above-entitled court, did wrongfully and unlawfully conspire, combine, confederate, and agree together to defraud the United States out of a portion of its public lands subject to private sale and situated upon the Umatilla Indian reservation, in Umatilla county, Oregon, and not included within the new boundaries of said reservation, and not allotted or required for allotment to the Indians, and which was not sold at the public sale of said lands theretofore held at the price for which said lands had been appraised and upon the condition provided in the act entitled 'An act providing for the allotment of lands in severalty to the Indians residing upon the Umatilla reservation in the state of Oregon and granting patents therefor and for other purposes,' by means of soliciting and procuring persons to make false and fraudulent applications and affidavits for the purchase of said lands for and on account of and at the solicitation of the said defendants J. H. Raley, John W. Crow, and the said William Rahe, and by procuring such persons to make contracts at the time of and prior to such application by said persons to purchase said lands, whereby the title thereto should inure to the benefit of said defendants J. H. Raley and John W. Crow, and by causing and procuring such persons so to be solicited and procured to make such false and fraudulent applications and affidavits for the purchase of said lands to make false and fraudulent proof of residence and cultivation upon said lands, and thereby acquire title from the government of the United States to such lands for the use and benefit of said defendants J. H. Raley and John W. Crow. And the said wrongful and unlawful conspiracy, combination, confederation, and agreement so wrongfully and unlawfully form-

ed and entered into by and among the defendants J. H. Raley, John W. Crow, and William Rahe and J. H. Parkes, and other persons to the grand jurors unknown, was in continuous operation and continuously in process of execution by the defendants J. H. Raley and John W. Crow at all the dates and days on and between the fifteenth (15th) day of August, 1902, and the first (1st) day of March, 1908."

It is first suggested that a conspiracy under the federal statute must, if it is based upon the doing of an unlawful act, be a combination to do an act that is constituted an offense or a crime by some statute of the general government. I do not understand such to be the law. By section 5440, Rev. St. (U. S. Comp. St. 1901, p. 3676), it is declared to be a conspiracy if two or more persons conspire to do either of two things, namely, to commit any offense against the United States, or to defraud the United States in any manner, or for any purpose. There are, concededly, many ways in which the government may be defrauded, and yet the acts which go to or encompass the perpetration of the fraud are not made criminal by statute. It is sufficient that the purpose be to defraud the government in some way or manner. It may be to defraud it out of its property, or some property right, but not necessarily so; for it may be to commit a willful fraud upon the law or some statutory requirement pertinent to be observed in view of the conditions present and controlling. Hyde v. Shine, 199 U. S. 62, 25 Sup. Ct. 760, 50 L. Ed. 90; Curley v. United States, 130 Fed. 1, 64 C. C. A. 369; United States v. Lonabaugh (D. C.) 158 Fed. 314. The following language employed in the last case is indicative of the principle:

"The first question may be disposed of in a word, for it was admitted at the argument, as I understood counsel, that in order to bring the defendants within the meaning of section 5440, Rev. St. (U. S. Comp. St. 1901, p. 3676), the words 'conspiracy to defraud the United States' do not necessarily mean that there shall be pecuniary loss or damage to the government, resulting from false representations made to its officers in the performance of their duties, but that any false practice or trick set in motion for the purpose of inducing the government officials, in executing the laws of the United States in cases where they must act upon statements made by the parties interested, to act in a way which would be unlawful if the real truth were known, is a fraud upon the government."

Next, it is strenuously urged that the means charged by which it is alleged the object and purposes of the conspiracy were to be accomplished or effected are wholly insufficient in substance and in the manner of their averment in the indictment. To comprehend the force of the averments as to the means to be employed for effecting the purpose of the alleged conspiracy, it will be necessary to allude to the statute under which it was sought to acquire title to the lands involved. The act in question is that of March 3, 1885, relating to the allotment of lands in severalty to the Indians residing upon the Umatilla Indian reservation. Act March 3, 1885, c. 319, 23 Stat. 340. Certain lands upon the reservation were set aside to be allotted, which left a residue. This residue was directed to be sold for the use and benefit of the Indians residing upon said reservation. It is provided that such lands be sold at public auction, each purchaser being entitled to 160 acres of untimbered lands, and an additional 40 acres of timbered lands, and no more; the purchase price for the timbered lands to be paid down, and

that for the untimbered lands to be paid in three equal annual installments. It is further declared that:

"Each purchaser shall, at the time of making his purchase, make and subscribe an oath or affirmation that he is purchasing said lands for his own use and occupation, and not for or on account of or at the solicitation of any other, and that he has made no contract whereby the title thereto shall, directly or indirectly, inure to the benefit of another. And if any conveyance is made of the lands set apart and allotted as herein provided, or any contract made touching the same, or any lien thereon created before the issuing of the patent herein provided, such conveyance, contract, or lien shall be absolutely null and void. And before a patent shall issue for untimbered lands the purchaser shall make satisfactory proof that he has resided upon the lands purchased at least one year and has reduced at least twenty-five acres to cultivation. No patent shall issue until all payment shall have been made; and on the failure of any purchaser to make any payment when the same becomes due, the Secretary of the Interior shall cause said land to be again offered at public or private sale, after notice to the delinquent; and if said land shall sell for more than the balance due thereon, the surplus, after deducting expenses, shall be paid over to the first purchaser."

The officers of the government were unable to sell all these lands. at public sale. Later, to wit, on July 1, 1902, an act was passed providing for the sale of such as yet remained at private sale. Act July 1, 1902 (32 Stat. 730, c. 1380). The same terms and conditions attending the purchase, and the same limitations as to the amount of purchase, were imposed as in the former act. Jones v. Hoover (C. C.) 144 Fed. 217. These statutes impose three conditions relevant to this inquiry, namely: That each purchaser is entitled to purchase no more than 160 acres of untimbered and 40 acres of timbered lands: that he shall, at the time of making purchase, make oath or affidavit that he is purchasing said lands for his own use and occupation, and not for, or on account of, or at the solicitation of, any other, and that he has made no contract whereby the title thereto shall, directly or indirectly, inure to the benefit of another; and that, before a patent shall issue, the purchaser shall make satisfactory proof that he has resided upon the untimbered lands at least one year and has reduced at least ·25 acres to cultivation.

Now, it is charged that the defendants conspired to defraud the United States out of a portion of the public lands by means of soliciting and procuring persons to make false and fraudulent applications and affidavits for the purchase thereof, which were in reality for and on account of the defendants themselves. The lands were now selling at private sale, so that application was required to be made to the proper authorities for their purchase. It is objected that:

"There is no allegation that they [the applications and affidavits] were intended to be used, or that the plan of the conspiracy contemplated their use, in any manner that would contravene any statute or that would tend to effect the objects of the conspiracy."

I do not think this to be necessary. It is sufficient that the means be set out with such particularity as will put the defendant upon notice of what he has to meet in that respect at the trial. But more of this later.

The next contention is that there is no requirement of statute that an affidavit shall be made for the purchase of the land, but that an oath

or affirmation shall be made by the purchaser at the time of the purchase, and that the charge is not that these defendants conspired to defraud the government by procuring persons who had become purchasers to make fraudulent oaths or affidavits. Then it is further asserted that an oath or affidavit, to be effective, must be taken before an officer qualified to administer the oath, and that there is no averment that any such was administered by any person qualified to administer the same, or that such an oath was in fact solicited or procured for the purpose of deceiving any one.

The first objection is hypercritical. It is plain that the pleader has reference to the purchaser, and that the means assigned were to procure such person to make false affidavits for the purchase. The applicant becomes a purchaser, to all intents and purposes, when he makes his application, accompanied by the required oath or affirmation. True, the purchase is not complete, so as to entitle him to a patent, until he has paid the full purchase price; but he is deemed a purchaser when he has done those things which put him into contractual relations with the government, to the end that he may acquire his title in due course under the law. So that it is a palpable fraud upon the government to procure persons to make false oaths or affidavits, to be submitted with their applications, with a view to becoming such purchasers. A false affidavit is tantamount to a false oath or affirmation.

As to the next objection, it is unnecessary to set forth the details of the administration of the oath, by whom administered, and that the person officiating was an officer duly qualified to perform the service. Then, again, it is urged that the indictment should show in what respect the affidavits were false or fraudulent. To this the answer is the same. But, not to pursue the objections in detail, the primary and essential objects of the indictment are: First, to furnish the accused with such a description of the charge against him as will enable him to make his defense, and avail himself of his conviction or acquittal against a further prosecution for the same cause; and second, to inform the court of the facts alleged, so that it may decide whether they are sufficient in law to support a conviction, if one should be had. To show forth these objects, facts must be stated, not conclusions of law alone. United States v. Cruikshank et al., 92 U. S. 542, 558, 23 L. Ed. 588.

Since the decision of the case of Dealy v. United States, 152 U. S. 539, 14 Sup. Ct. 680, 38 L. Ed. 545, there remains but little, if any, question as to what is necessary to be set forth showing the means to be employed to the end of defrauding the government out of its public lands. The defendant in that cause sought to make use of the homestead law by pretending to comply therewith, through false and fictitious entries. But it was simply alleged that the defendants, naming them, did conspire, confederate, and agree together to defraud the United States of the title and possession of large tracts of land "by means of false, feigned, illegal, and fictitious entries of said lands under the homestead laws of the United States." Then are set forth the overt acts. This was held sufficient as an averment of the means by which it was sought to accomplish the fraud complained of. In the case at bar the means relied on are set out with much greater fullness,

and with equal pertinency, namely: By procuring persons to make false affidavits for the purchase of said lands for the account of the defendants, and by procuring such persons to make contracts prior to such purchase whereby the title would inure to the benefit of the defendants, and by procuring such persons to make false proofs of residence upon and cultivation of said lands. All such acts are forbidden and unlawful, so that both the act and the means employed are unlawful.

But, upon principle, is not this ample specification, so that the defendants will be fully advised as to the particular charge they are called upon to answer? The conspiracy consists in the unlawful combination, and, but for the necessity of alleging an overt act, the offense is committed when the combination is entered into; and this without anything further being done to effect the object of the conspiracy. Such being the case, how would it be possible to set out the means in a more particular manner, if the purpose of the conspiracy is such as is alleged here? It could not be known then what persons could be procured to make the false oath, or what officer would administer it. Yet, under the statute, the offense is complete, or has been committed, when there has been any overt act to effect the object of the conspiracy. That overt act may have consisted in agreeing with some person simply that he would make an application, and a false oath to accompany it, looking to the end the conspirators had in view. There is no doubt that the means are sufficiently stated. That the lands are adequately described is also settled by the Dealy Case. Indeed, that case covers almost every feature of this, as it relates to the sufficiency of the indictment. See, also, United States v. McKinley (C. C.) 126 Fed. 242.

Another question presented is that the alleged purpose of the conspiracy was to defraud the government of a portion of its public lands, when in reality the lands in contemplation were not public lands, but lands as to which the Indian title had not as yet been extinguished. It is unnecessary to enter into a discussion as to what are public lands in any designated sense, as I do not deem it at all material to the present inquiry. It is enough to know that the ultimate title to the lands involved is in the United States, and that patent comes through that source to persons becoming purchasers. But, further than this, the lands are so definitely described as that the words "public lands" could be eliminated as surplusage if not properly applied. The description runs:

"A portion of its public lands subject to private sale and situated upon the Umatilla Indian reservation, in Umatilla county, Oregon, and not included within the new boundaries of said reservation, and not allotted or required for allotment to the Indians, and which was not sold at the public sale," etc.

These lands are treated as equitably belonging to the Indians upon this reservation; the United States holding the legal title, but rather in trust for .the use and benefit of the Indians. A conspiracy to defraud the government of its title to these lands would constitute an offense, as well as one to defraud the government of public lands using the words in their ordinary acceptation.

The next question relates to the statute of limitation. Let it be borne in mind that the scheme that the defendants had devised, ac-

cording to the charge of the indictment, was ultimately to divest the government of its title to the lands in question. It is alleged that the conspiracy was entered into on the 15th day of August, 1902, but that it was in continuous operation and process of execution from then until the 1st day of March, 1908. The first act which it is alleged was done in furtherance of the conspiracy was of date September 15, 1902, and consisted in the defendants procuring Rose Bogart and many others to make application to the land office at La Grande to purchase each 160 acres of untimbered land and 40 acres of timbered land, and to make false and fraudulent affidavits with relation thereto, whereupon the said defendants paid the first installment of the purchase money for the untimbered lands and the full amount of the purchase money for the timbered lands, together with the necessary expenses and filing fees of the alleged entrymen. The second overt act relates to the procuring by defendants, on November 16, 1903, of three several parties to make final proofs as to certain lands, describing them. The third relates to the procuring of others, on November 20, 1903, to make final proofs as to other lands; the fourth, to procuring, on November 21, 1903, still others to make like final proofs; the fifth, to like transactions occurring on the ———— day of September, 1903. The sixth relates to an act whereby, on the ———— day of July, 1905, the defendants, in behalf of one David Nelson, one of the supposed purchasers gave notice of the intention of said David Nelson to make final proofs; the seventh, to a like notice given on September 27, 1905, in behalf of Elmer Hubbard, another of the alleged purchasers; the eighth, to a like notice given on April 24, 1905; the ninth, to a like notice given on December 14, 1905; the tenth, to a like notice given May 10, 1905; the eleventh, to a like notice given December 29, 1905; the twelfth, to an application made June 23, 1903; and the thirteenth, and last, relates to an act of the defendant Raley, performed August 26, 1905, whereby he paid to the proper officer of the land office $17.64, being the third and final payment upon untimbered lands included in the application of Henry Shockey then deceased. The indictment was found June 8, 1908. By this it will be seen that, while part of these overt acts were committed more than three years previous to the date of the finding of the indictment, others were committed within the three years. This shows also a continuous operation under the alleged scheme for the accomplishment of an ultimate purpose, namely, to obtain title to these lands from the government, which title would not pass until patent issued.

The question presented under such a state of the case has been set at rest in this circuit by the case of Jones v. United States, 162 Fed. 417, 427, 89 C. C. A. 303, 313. Ross, Circuit Judge, after putting a case of great analogy to this, says:

"The conspiracy was a continuing one in its nature, and, so long as the conspirators continued in pursuance of it, each overt act committed by any one of them gave to the conspiracy effect and constituted an offense at the time of the commission of the act. So, in the case at bar, the conspiracy alleged contemplated the commission of various overt acts. It was a continuing conspiracy, and so long as the conspirators continued in pursuance of it, and did not avail themselves of the locus pœnitentiæ that section 5440 of the Revised Statutes

afforded them, every overt act committed by any party to the conspiracy gave new effect to the conspiracy and constituted another crime."

Other cases are to the same effect and constitute the undoubted weight of authority at this time. See United States v. Bradford (C. C.) 148 Fed. 413; United States v. Brace (D. C.) 149 Fed. 874; Ware v. United States, 154 Fed. 577, 84 C. C. A. 503, 12 L. R. A. (N. S.) 1053; United States v. Barber (D. C.) 157 Fed. 889.

I take it that the true doctrine is that, so long as it may be shown that the conspirators are acting together for the common purpose comprehended by the scheme, and have, while so acting together, committed some overt act, all within the three years prior to the finding of the indictment, the statute has not run. A conspirator may withdraw from the common purpose. If he does so, and three years have run without his participation, although others of the original conspirators may have continued in the execution of the common design, he could not be prosecuted. But as to those who are still participating in the effectuation of the unlawful purpose when the overt act is committed, being committed within the three years, they are still confederating, conspiring, and agreeing together, and are chargeable with having committed the offense of conspiracy within the statute fixing the limitation for prosecuting the same. The objection, therefore, that the statute of limitations has run, is without merit.

For the reasons here stated, the demurrer should be overruled; and it is so ordered.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes